UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| ROBERT A. GREENE, | ) | |
| | ) | 2:09-cv-00466-RCJ-RJJ |
| *Plaintiff*, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| EXECUTIVE COACH & CARRIAGE, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

**I. INTRODUCTION**

Before the Court is Defendant Bentley Transportation Services' Motion to Dismiss. (#6). This case is factually similar to *Lucas v. Bell Trans*, 2:08-cv-01792-RCJ-RJJ. The Plaintiff limousine driver is suing the Defendant limousine company on behalf of himself and those similarly situated for various violations of state and federal labor law. In the present motion, Defendant moves to dismiss Plaintiff's state law claims.

The Court has considered the pleadings and arguments of both parties. IT IS HEREBY ORDERED THAT Defendant's Motion to Dismiss (#6) is GRANTED.

**II. BACKGROUND**

On March 10, 2009, Plaintiff Robert A. Greene filed the present lawsuit individually and on behalf of all persons who have worked for Defendant Bentley Transportation Services dba Executive Coach & Carriage ("Defendant") within the last three years. Plaintiff asserts several claims against Defendant: (1) failure to pay the minimum wage under Fair Labor Standards Act ("FLSA"); (2)

failure to pay overtime under the FLSA; (3) liquidated damages under the FLSA; (4) failure to pay for all hours worked under Nevada Revised Statute 608.016; (5) failure to pay the minimum wage under Article 15, § 16 of the Constitution of the State of Nevada; (6) failure to pay overtime under Nevada Revised Statute 608.100(1)(b); (7) waiting penalties under Nevada Revised Statute 608.040; and (8) improper wage deductions under Nevada Revised Statute 608.100.

In the present motion, Defendant contends that Plaintiff's state law claims should be dismissed. Defendant argues that the state law minimum wage and overtime claims should be dismissed because limousine drivers are excepted from Nevada's overtime and minimum wage provisions. Defendant further argues that, since Plaintiff has no cognizable claim for backpay under Nevada law, there is no basis for an award of waiting penalties and that claim must also be dismissed. Finally, Defendant asserts that Plaintiff has not stated a claim for improper wage deduction.

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See North Star Int'l. v. Arizona Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not

required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

### IV.   ANALYSIS

**A.   Failure to Pay for All Hours Worked and Violation of Nevada Minimum Wage Laws**

In his complaint, Plaintiff claims that Defendant violated Nevada's minimum wage laws. Defendant apparently did not pay its drivers an hourly wage. Instead, drivers were compensated only with a percentage of their fares. Plaintiff alleges that, under this pay scheme, Defendant violated Nevada law by failing to pay its limousine drivers the minimum wage for each hour they worked. Plaintiff alleges several specific situations in which drivers were not paid, including: (1) a mandatory thirty-two hour training course for new drivers; (2) mandatory company meetings; (3) time required to fix and maintain Defendant's vehicles; and (4) generally any non-driving time while the drivers were engaged in work for Defendant.

In the present motion, Defendant asserts that Plaintiff's state law minimum wage claim must be dismissed because limousine drivers are specifically excluded from Nevada's minimum wage laws under Nevada Revised Statute 608.250(2)(e). Plaintiff counters that Article 15, § 16 of the Nevada Constitution, which was enacted by ballot initiative in 2006, impliedly repealed the previously existing exclusions. Because the electorate did not intend to repeal the exclusions to

Nevada's minimum wage law by enacting Article 15, § 16, those exclusions remain in force, and the Court should thus grant dismissal of Plaintiff's state law minimum wage claims.

### 1. The Nevada Wage and Hour Law and Nevada's Constitutional Amendment

Nevada has minimum wage and overtime compensation statutes. The Nevada Wage and Hour Law ("NWHL"), which is codified at Nevada Revised Statute 608.250, establishes minimum wages that apply to private employers within this state. Included in the NWHL is a list of occupations that are specifically excluded from its minimum wage provision. *See* Nev. Rev. Stat. 608.250(2). Among the excluded occupations are "taxicab and limousine drivers." Nev. Rev. Stat. 608.250(2)(e).

In the 2006 election cycle, the Nevada voters approved a measure, raised by initiative, entitled "Raise the Minimum Wage for Working Nevadans." The effect of the measure was to add Article 15, § 16 to the Constitution of the State of Nevada ("Minimum Wage Amendment" or "Amendment"). The Minimum Wage Amendment essentially raised the state minimum wage to $6.15 per hour unless an employer provided health insurance to its employees under certain terms, in which case the minimum wage was set at $5.15 per hour. The Amendment also provided for annual cost of living increases to the minimum wage, which were tied to the Consumer Price Index. The Minimum Wage Amendment made no mention of any of the exclusions in Nevada Revised Statute 608.250(2).

The dispute between the parties centers on the import of Section 16(c) of the Minimum Wage Amendment, which defines "employer" and "employee." Section 16(c) provides:

> As used in this section, "employee" means any person who is employed by an employer as defined herein but does not include an employee who is under eighteen (18) years of age, employed by a nonprofit organization for after school or summer employment or as a trainee for a period not longer than ninety (90) days. "Employer" means any individual, proprietorship, partnership, joint venture, corporation, limited liability company, trust, association, or other entity that may employ individuals or enter into contracts of employment.

Nev. Const. art. 15 § 16(c). Subject to these definitions, Section 16(a) of the Minimum Wage Amendment provides that "[e]ach employer shall pay a wage to each employee of not less than the hourly rates set forth in this section." Nev. Const. art. 15, § 16(a). Plaintiff's theory is that the Minimum Wage Amendment impliedly repealed the enumerated exemptions in Nevada Revised Statute 608.250(2). Plaintiff argues that since he fits the definition of "employee" under Article 15, § 16(c), he is entitled to the minimum wage. Defendant counters that the only effect of the Amendment was to raise the minimum wage, and that the NWHL exclusions are still in force.

### 2. The Scope of the Minimum Wage Amendment

The viability of Plaintiff's state law minimum wage claim depends upon whether the Minimum Wage Amendment and the exemptions in Nevada Revised Statute 608.250(2) conflict. It is a basic principle that, if a constitutional provision conflicts with a statute, the constitutional provision controls. *See We the People Nev. v. Miller*, 192 P.3d 1166, 1177 n.55 (Nev. 2008). If the Minimum Wage Amendment's definition section was intended to completely supplant the NWHL's list of exemptions, then those exemptions would be impliedly repealed and Plaintiff's state law minimum wage claim survives. Conversely, if the Amendment was intended only to raise the minimum wage and not disturb the exemptions, those exemptions (including the exemption for limousine drivers) still stand and Plaintiff's claim fails.

As a preliminary matter, implied repeal is disfavored under Nevada law. *Presson v. Presson*, 147 P. 1081, 1082 (Nev. 1915). Implied repeal occurs only when "there is an irreconcilable repugnancy between the two laws compelling the conclusion that the later enactment necessarily repeals the earlier." *Las Vegas v. Int'l Ass'n of Firefighters*, 543 P.2d 1345, 1346 (Nev. 1975). "Where express terms of repeal are not used, the presumption is always against an intention to [impliedly] repeal an earlier statute." *Western Realty Co. v. Reno*, 63 Nev. 330, 344 (Nev. 1946).

The scope of a constitutional provision is determined by the intent of those who enacted it. *See Guinn v. Legislature of Nev.*, 119 Nev. 460, 471 (Nev. 2003) ("In construing the Constitution,

1  our primary objective is to discern the intent of those who enacted the provisions at issue."). Since
2  a ballot initiative is enacted by the voters, the crucial determination that must be made is what the
3  voters intended when they passed the measure. *See Miller v. Burk*, 188 P.3d 1112, 1120 (Nev.
4  2008). When the language of constitutional provision adopted through initiative process is clear on
5  its face, Nevada courts will not go beyond that language in determining the voters' intent. *Id*. But
6  if the language of such a constitutional amendment is ambiguous, meaning that it is subject to two
7  reasonable but inconsistent interpretations, the Court may turn to extrinsic evidence to determine
8  what the voters intended. *Id.* Courts attempting to discern the voters' intent and understanding of
9  a ballot measure may consider the ballot summaries and arguments issued to the voters, *Prof'l
10 Eng'rs in Cal. Gov't v. Kempton*, 155 P.3d 226, 239 (Cal. 2007), as well as "public policy and
11 reason." *Miller*, 188 P.3d at 1120.

12     Because the language of the Minimum Wage Amendment is subject to two reasonable but
13 inconsistent interpretations, the Court may examine extrinsic evidence to discern the intent of the
14 voters when they enacted it. *See Miller*, 188 P.3d at 1120. One possible interpretation of the
15 Minimum Wage Amendment is that it was intended to create an inalienable *right* to a minimum
16 wage for anyone defined as an employee under its terms. Under this interpretation, the exclusions
17 in Nevada Revised Statute 206.250 would be irreconcilable with the Nevada Constitution, and would
18 thus be impliedly repealed. However, an equally reasonable interpretation of the Minimum Wage
19 Amendment is that the voters merely intended to bypass the legislature to raise the minimum wage
20 and provide for mandatory annual cost-of-living increases, and that the Amendment otherwise
21 preserved the status quo ante. Under this interpretation, there would be no conflict between the
22 Minimum Wage Amendment and the NWHL, and the exclusions would remain in force. In order
23 to determine which of these two reasonable interpretations the voters intended, resort to extrinsic
24 evidence is necessary.
25

An examination of the available extrinsic evidence suggests that the Nevada voters did not intend to repeal the exclusions in the NWHL by enacting the Minimum Wage Amendment. Perhaps the best evidence of the voters' intent in enacting the Amendment is the wording of the ballot question and the scope of the arguments for and against the initiative.[1] *See People v. Rizo* 996 P.2d 27, 30 (Cal. 2000) (noting the particular usefulness of "the analyses and arguments contained in the official ballot pamphlet" in determining voter intent). The measure itself is entitled "Raise the Minimum Wage for Working Nevadans" (#6 Ex. 2 at 35), which seems to imply that the enactment's scope was limited to changing the amount of the minimum wage and not the occupations entitled to that minimum wage. The condensation of the ballot question, which reduces the question to a single sentence, asks: "Shall the Nevada Constitution be amended to raise the minimum wage paid to employees?" (#6 Ex. 2 at 31.) Voters reading this condensed question would have no reason to think that they were voting to repeal exemptions to the previously existing law, nor would they have any reason to consider the impact of such a change when casting their ballots. The arguments both for and against the Amendment were entirely centered upon its impact on those already receiving the minimum wage. One would expect that if one of the contemplated purposes of the enactment was to abolish the NWHL's exceptions that the arguments would include at least a passing reference to how such a change would affect the state. In sum, a Nevada voter who had cast her ballot in favor of the Amendment based on careful consideration of these materials would likely be surprised if someone told her that she had also voted to extend the minimum wage to casual babysitters, live-in domestic workers, limousine drivers, and other previously excluded occupations. *See* Nev. Rev. Stat. 608.250(2). Given the presumption against implied repeal, the extrinsic evidence available is insufficient to support the conclusion that Nevada voters intended to abolish the NWHL's exceptions

---

[1] Defendant has provided these materials as Exhibit 2 to its Motion to Dismiss.

by enacting Article 15, § 16. Rather, the voters intended only to change the amount of the minimum wage and provide for mandatory cost-of-living increases.

### 3. The State Attorney General's Opinion

Plaintiff's opposition to the dismissal of his minimum wage claim rests almost entirely on an advisory opinion issued by the Nevada Attorney General, which concluded that the Minimum Wage Amendment *did* impliedly repeal the exemptions in the NWHL. The relevant excerpt from the opinion states as follows:

> The effect of the proposed amendment on the NRS 608.250 exclusions is controlled by two presumptions. First, the voters should be presumed to know the state of the law in existence related to the subject upon which they vote. Op. Nev. Atty' Gen. 153 (December 21, 1934). Second, it is ordinarily presumed that "[w]here a statute is amended, provisions of the former statute omitted from the amended statute are repealed." *McKay v. Board of Supervisors*, 730 P.2d 437, 442 (1986). In keeping with these presumptions, the people, by acting to amend the minimum wage coverage and failing to include the statutory exclusions in the proposed amendment, are presumed to have intended the repeal of the existing exclusions so that the new minimum wage would be paid to all who met its definition of "employee." Accordingly, the proposed amendment would effect an implied repeal of the exclusions from minimum wage coverage at NRS 608.250(2).

(#8 Ex. A at 12.)

Opinions issued by the Attorney General are not binding on the Court. *Cannon v. Taylor*, 493 P.2d 1313, 1314 (Nev. 1972). The Nevada Supreme Court has issued holdings contrary to Attorney General opinions if the court had concluded that the Attorney General's opinion was poorly reasoned. *See, e.g.*, *Miller v. Burk*, 188 P.3d 1112, 1123 n.54 (Nev. 2008) (refusing to adhere to an Attorney General opinion because it was "internally inconsistent"); *Blackjack Bonding v. City of Las Vegas Municipal Court*, 14 P.3d 1275, 1279 (Nev. 2000) (rejecting the reasoning in an Attorney General Opinion because "[the] opinion confuse[d] jurisdiction, which is subject to legislative control, with independent, inherent judicial powers, which are not subject to legislative control").

Because the Attorney General Opinion in this case is poorly reasoned, the Court should disregard it. Both of the assumptions upon which the Attorney General's analysis rests are flawed. First, the Attorney General states that "the voters should be presumed to know the state of the law in existence related to the subject upon which they vote."[2] The presumption the Attorney General makes here appears to be a modification of the well-settled presumption that *legislatures* are presumed to know the state of the law when they act. *See, e.g.*, *Int'l Game Tech. Inc. v. Second Judicial Dist. Court of Nev.*, 127 P.3d 1088, 1103 (Nev. 2005). This presumption is eminently sensible when applied to legislators because, as professional lawmakers, they should be expected to be very familiar with the law. But the reasonableness of this presumption falls apart when it is applied to lay voters; it is not reasonable to assume that a cashier voting on a ballot initiative is intimately familiar with related provisions of the Nevada Revised Statutes. The Attorney General's second presumption, that "it is ordinarily presumed that, where a statute is amended, provisions of the former statute omitted from the amended statute are repealed," simply has no application here. The voters were not voting to amend Nevada Revised Statute 608.250; they were voting to create an entirely new section of the Nevada Constitution which could happily co-exist with the previously existing statutory exceptions. Given that these two presumptions are flawed, it does not follow that "[the voters] are presumed to have intended the repeal of all existing exclusions" by not including them in the minimum wage amendment.

### 4. Conclusion

Plaintiff's state law minimum wage claim should be dismissed. Plaintiff, as a limousine driver, is expressly excluded from Nevada's minimum wage law under Nevada Revised Statute 608.250(2). The Nevada electorate did not intend an implied repeal of that exemption by enacting

---

[2] As Defendant points out, the authority the Attorney General cites for this proposition is another (non-binding) Attorney General opinion. There does not appear to be any mandatory authority supporting a presumption that the voters are presumed to know the state of the law in existence related to the subject upon which they vote.

the Minimum Wage Amendment. Thus, the exemption is still in force and Plaintiff's claim fails.

### B.     Plaintiff's State Law Overtime Claim

Defendant also contends that Plaintiff's overtime claim must also be dismissed. The statute governing Nevada's overtime law is Nevada Revised Statute 608.018. Nevada Revised Statute 608.018(3)(j) specifically states that taxicab and limousine drivers are not entitled to overtime under Nevada law. Plaintiff, apparently realizing this, claims that his state law overtime claim arises not under Nevada Revised Statute 608.018 but rather under Nevada Revised Statute 608.100. That statute provides, *inter alia*, that it is "unlawful for any employer to . . . [p]ay a lower wage, salary or compensation to an employee than the amount that employer is required to pay employee by virtue of any statute or regulation . . . ." Plaintiff claims that Defendant's failure to pay its limousine drivers overtime is a violation of the FLSA, which in turn amounts to a violation of Nevada Revised Statute 608.100. Because Nevada Revised Statute 608.100 affords Plaintiff no private cause of action, the Court should dismiss Plaintiff's state law overtime compensation claim.[3]

The Nevada Supreme Court held in *Baldonado v. Wynn Las Vegas,* 194 P.3d 96 (Nev. 2008), that Nevada Revised Statute 608.100 does not provide a private cause of action.[4] In *Baldonado*, the plaintiffs were table game dealers that worked for defendant Wynn Las Vegas. *Id.* at 98. Wynn modified its tip policy to compel the table game dealers to share a portion of their tips with pit managers and floor supervisors, which lowered the dealers' overall salaries. *Id.* at 99. The table game dealers filed a class action suit against Wynn seeking damages and injunctive relief. *Id.* Among the dealers' claims was an allegation that Wynn had violated Nevada Revised Statute

---

[3] Even if Nevada Revised Statute 608.100 did provide a private cause of action, Plaintiff's position that any violation of the FLSA amounts to a violation of 608.100 would lead to an absurd result. Under Plaintiff's theory, any Nevada FLSA Plaintiff would be able to bootstrap any FLSA opt-in collective action into a Rule 23(b)(3) opt-out class action based on a violation of 608.100. It seems unlikely that the Nevada legislature intended such a result.

[4] This Court engaged in a detailed treatment of *Baldonado* in the recent case of *Lucas v. Bell Trans*, 2:08-cv-01792-RCJ-RJJ (#27 at 4–8.)

608.100. *Id.* The trial court determined that Nevada Revised Statute 608.100 did not confer a private cause of action on the dealers and dismissed that claim. *Id.* The Nevada Supreme Court affirmed.[5] *Id.* at 107. The court determined that "the Legislature has entrusted the labor laws' enforcement to the Labor Commissioner, unless otherwise specified." *Id.* at 102. The court also highlighted the adequacy of an administrative remedy provided under Chapter 608, which allows private parties to file labor law complaints with the Labor Commissioner. *Id.* at 102. The Commissioner has a duty to hear and resolve such complaints. *Id.* at 104.

In short, Nevada Revised Statute 608.100 confers no private right of action. Because Plaintiff's overtime claim is based on a violation of Nevada Revised Statute 608.100, his claim fails.

### C. Plaintiff's Improper Wage Deduction Claim

Defendant has also moved to dismiss Plaintiff's claim for "improper wage deductions." Plaintiff claims in his Complaint that Defendant deducted a "leasing fee" of at least five dollars each time a limousine driver drove a vehicle for a client or customer. (#1 at 16 ¶ 64.) Plaintiff alleges that these "leasing fees" violated Nevada Revised Statute 608.100(2)'s proscription against "requir[ing] an employee to rebate, refund or return any part of the wage, salary or compensation earned by and paid to the employee."

The essence of Defendant's argument is that Plaintiff's factual allegations are insufficient to support his claim for improper wage deduction. However, the Court need not consider this argument because, as discussed above, Nevada Revised Statute 608.100 does not grant a private cause of action. Since this claim is based on an alleged violation of Nevada Revised Statute 608.100, the claim should be dismissed.

### D. Plaintiff's Claim for Waiting Penalties

---

[5] The Nevada Supreme Court also determined that there was no private cause of action under 608.160 (which prohibits taking employee tips), and 608.120 (which makes it unlawful for managers and shift bosses to require gratuities as a condition of employment). Neither of those statutes are at issue in the case at bar.

Finally, Defendant claims that Plaintiff's claim for waiting penalties should be dismissed. Plaintiff's Complaint included a claim for relief under Nevada Revised Statute 608.040. That statute provides:

> 1. If an employer fails to pay
>
> (a) Within 3 days after the wages or compensation of a discharged employee becomes due; or
>
> (b) On the day the wages or compensation is due to an employee who resigns or quits,
>
> the wages or compensation of the employee continues at the same rate from the day he resigned, quit or was discharged until paid or for 30 days, whichever is less.

Nev. Rev. Stat. 608.040. Plaintiff's Complaint "seek[s] waiting penalties in addition to wages due for themselves and all class members who terminated employment within the last three years." (#1 at 16 ¶ 62.

Because Plaintiff does not have any valid state law claim for minimum wage and overtime, there can be no delay damages. Under Nevada law, Plaintiff was not deprived of any wages or overtime which he had been due. Thus, there is no basis for this claim and it should be dismissed.

## V.  CONCLUSION

The Court has considered the pleadings and arguments of both parties. IT IS HEREBY ORDERED THAT Defendant's Motion to Dismiss (#6) is GRANTED.

DATED:     November 10, 2009

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE