# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

ROBERT G. GREENE, on behalf of himself )
and all others similarly situated, )
) Case No.: 2:09-cv-00466-GMN-CWH
                Plaintiffs, )
vs. ) **ORDER**
)
JACOB TRANSPORTATION SERVICES, )
LLC, *et al.*, )
)
                Defendants. )
)

      Pending before the Court is the Motion to Enjoin, (ECF No. 351), filed by Plaintiffs Robert G. Greene, Thomas Schemkes, and Gregory Green (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated. Defendants Jacob Transportation Services, LLC ("JTS") and Carol and James Jimmerson (collectively "Defendants") filed a Response, (ECF No. 353).

      On April 11, 2019, the Court held a hearing on Plaintiffs' Motion to Enjoin and the parties were ordered to file additional briefing, by April 18, 2019, addressing whether the state court orders interfere with the Settlement Order, and addressing whether the All Writs Act or Anti-Injunction Act applies to this case. (Mins. Proceedings, ECF No. 354). Plaintiffs and Defendants submitted supplemental briefs, (ECF Nos. 355, 356).[1] Additionally, Defendants filed a Motion for Partial Relief Under Federal Rule of Civil Procedure ("Rule") 60(b)(5), (ECF No. 360). For the reasons discussed herein, Plaintiffs' Motion to Enjoin and Defendants' Motion for Partial Relief Under Rule 60(b)(5) are **DENIED**.

---

[1] Defendants also submitted an Amended Declaration of Andrew Pastor, (ECF No. 359), in support of Defendants' Supplemental Response, (ECF No. 356).

## I. BACKGROUND

The instant Motion arises from the Court's Order granting final approval to the parties' class action settlement. (*See* Settlement Order, ECF No. 344). Plaintiffs are persons formerly employed by Defendant JTS as limousine drivers. (*See* First Am. Compl. ¶¶ 16, ECF No. 204). Defendants James and Carol Jimmerson are the sole officers and owners of JTS. (*Id.* ¶ 8). Plaintiffs initiated this class action suit (the "*Greene* Class Action") against Defendants, asserting claims under the Fair Labor Standards Act ("FLSA") and Nevada wage-and-hour law. (*Id.* ¶¶ 32–99).

Relevant here, the Court's Order on the parties' settlement (the "Settlement Order") incorporated by reference the parties' settlement agreement (the "Settlement Agreement") and provides that "Defendants shall fund the settlement by April 21, 2019." (Settlement Order 3:20–21, ECF No. 344). The Court expressly "retain[ed] jurisdiction to enforce the terms of the settlement, including the payment of the settlement fund." (*Id.* 3:22–23). The Court entered its Settlement Order on September 26, 2018, and the clerk of court entered judgment the following day, closing the case, (ECF Nos. 344, 345).

JTS subsequently sued 17 class members (collectively the "Drivers") in state court for allegedly stealing limousine rides during their employment with JTS and failing to report their earnings (the "State Actions"). In one of the State Actions, the class member, or Driver, moved to dismiss for JTS's failure to pursue a compulsory counterclaim in the *Greene* Class Action. (*See* Order Denying Def.'s Mot. to Dismiss, *JTS v. Onofrietti*, Case No. 18-C-011256 (March 19, 2019), Ex. 4 to Resp. to Mot. to Enjoin, ECF No. 353-6). In denying the motion, the court found that JTS did not waive and did not release any claims against the Drivers in the *Greene* Class Action. (*Id.* 2:21–23). Additionally, the court determined that JTS's claims for conversion, breach of fiduciary duty, breach of contract, and unjust enrichment were permissive rather than compulsory counterclaims in the *Greene* Class Action. (*Id.* 3:21–4:7).

In at least six of the State Actions, JTS successfully moved the Nevada state court for a writ of attachment and writ of garnishment in aid of attachment. JTS expressly sought to attach the class members' portions of their yet-to-be-distributed settlement awards. For example, in one of the cases,[2] *JTS v. Gebrekiros*, the court stated:

> The Plaintiffs have alleged that there is now due and owing from Defendant to Plaintiffs [JTS and Bentley Transportation Services, LLC] the principle sum of at least $5,056.27. The Plaintiffs have informed this Court that the Defendant's portion of the settlement in [the *Greene* Class Action] will be $518.20. Plaintiffs have also informed this Court that Plaintiff believes that his money is currently in the possession of James J. Jimmerson . . . .

(*See* Order 4:2–8, *JTS v. Gebrekiros*, Case No. 18-C-011252 (Apr. 2, 2019), Ex. A to Mot. to Enjoin, ECF No. 351-1). The court required that JTS post an undertaking as security in the amount of $518.20 and stated the persons upon whom writs of garnishment in aid of attachment may be served are JTS, James J. Jimmerson, and Carol Jimmerson. (*Id.* 4:12–17). The court described the property to be attached as "Solomon Gebrekiros' portion of the settlement in [the *Greene* Class Action] in the amount of $518.20." (*Id.* 4:18–22). The court further ordered the clerk of court to issue a prejudgment writ of attachment upon posting of JTS's undertaking, and that "within 3 days after the Clerk of Court issues a prejudgment writ of attachment, the Sherriff issue a writ of garnishment in aid of attachment on James J. Jimmerson, Esq." (*Id.* 5:1–9).

Plaintiffs filed the instant Motion to Enjoin shortly thereafter, contending, *inter alia*, that Defendants' initiation of the State Actions is an attempt "to attach the settlement proceeds so

---

[2] The other State Actions for which writs of attachment and garnishment were ordered have substantially similar language. (*See, e.g.*, Order, *JTS v. Naimi*, Case No. 18-C-011204 (Apr. 3, 2019), Ex. B to Mot. to Enjoin, ECF No. 351-2); (Order, *JTS v. Donev*, Case No. 18-C-011253 (Apr. 3, 2019), ECF No. 351-3); (Order, *JTS v. Onofrietti*, Case No. 18-C-011256 (Apr. 3, 2019), ECF No. 351-4); (Order, *JTS v. Ghebretensai*, Case No. 18-C-011935 (Apr. 2, 2019), ECF No. 351-5); (Order, *JTS v. Cialini*, Case No. 18-C-026281 (Apr. 3, 2019), ECF No. 351-6); (Order, *JTS v. Prchal*, Case No. 18-C-023297 (Apr. 2, 2019), Ex. 2 to Resp. to Mot. to Enjoin, ECF No. 354-4).

they can reduce their liability under the Court's Judgment." (Mot. to Enjoin 5:1–5, ECF No. 351). The State Actions, Plaintiffs continue, therefore constitute an impermissible interference with this Court's Settlement Order and an encroachment on its continued jurisdiction over the Settlement Agreement. (*Id.* 12:19–15:11).

## II. <u>LEGAL STANDARD</u>

Under the All Writs Act, federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *See* 28 U.S.C. § 1651(a). This authority is substantially limited by the Anti-Injunction Act, which prevents federal courts from enjoining "proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *See* 28 U.S.C. § 2283. "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed . . . ." *Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 297 (1970). Thus, an injunction may issue only upon "'a strong and unequivocal showing' that such relief is necessary." *Sandpiper Vill. Condo. Ass'n., Inc. v. Louisiana-Pac. Corp.*, 428 F.3d 831, 842 (9th Cir. 2005) (quoting *Bechtel Petroleum, Inc. v. Webster*, 796 F.2d 252, 253–54 (9th Cir. 1986)).

## III. <u>DISCUSSION</u>

Plaintiffs contend that the state court orders' issuing of writs of attachments and garnishment threaten this Court's jurisdiction over the settlement because this Court retained jurisdiction over settlement-based disputes. (Mot. to Enjoin 14:6–15:2, ECF No. 351). Plaintiffs also assert that the State Actions interfere with the Settlement Order because the garnishment writs will prevent Defendants from funding the settlement by April 21, 2019. (*Id.* 13:15–14:6).

Defendants respond that Plaintiffs fail to demonstrate that "a writ of attachment or a writ of garnishment issued by a Nevada State court would interfere with this Court's jurisdiction, would re-litigate the issues decided by this Court, or would somehow prevent this Court from enforcing its judgments." (Resp. to Mot. to Enjoin. 9:7–10, ECF No. 353). Defendants cite to Nevada law providing that a defendant's debts may be subject to attachment or garnishment notwithstanding those debts being the subject of another pending action. (*Id.* 9:14–10:4). Defendants also cite authority for the proposition that "[s]ettlement proceeds . . . may be attached by the judgment of another court," and that this Court must give full faith and credit to state courts' orders to that effect. (*Id.* 10:11–12:1).

**A. Exceptions to the Anti-Injunction Act**

Plaintiffs raise two exceptions to the Anti-Injunction Act in support of its Motion—the "in aid of jurisdiction," and the "re-litigation" exceptions. (Mot. to Enjoin 13:4–15:11). The in-aid-of-jurisdiction exception applies only when the "federal court's flexibility and authority to decide [a] case" is "seriously impaired" by a parallel state court proceeding. *Sandpiper Vill.*, 428 F.3d at 846–47. The re-litigation exception allows federal courts to "protect the res judicata effect of their judgments and prevent the harassment of . . . federal litigants through repetitious state litigation." *Id.* at 847.

"Both exceptions serve a similar purpose: 'to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'" *Brother Records, Inc. v. Jardine*, 432 F.3d 939, 944 (9th Cir. 2005) (quoting *Atl. Coast Line*, 398 U.S. at 295). Under these exceptions, a federal court may enjoin state court proceedings where necessary to effectuate a settlement agreement over which the federal court retained jurisdiction. *See Flanagan v. Arnaiz*, 143 F.3d 540, 545 (9th Cir. 1998).

///

### 1. Re-litigation Exception

The re-litigation exception permits federal courts to issue injunctions when necessary to "protect or effectuate its judgments." 28 U.S.C. § 2283. "This exception is grounded in 'the well-recognized concepts of res judicata and collateral estoppel.'" *Id.* (quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988)). "Thus, the exception permits a district court to enjoin state court litigation if that litigation is barred by the res judicata effect of the district court's earlier judgment." *Id.* (citing *Blalock Eddy Ranch v. MCI Telecomms. Corp.*, 982 F.2d 371, 375 (9th Cir.1992)). An "essential prerequisite . . . is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court." *Sandpiper Vill.*, 428 F.3d at 847 (quoting *Chick Kam Choo*, 486 U.S. at 147–48).

Here, the re-litigation exception does not apply. This Court's adjudication of this case and ultimately, the Settlement Order, are without findings or conclusions of law as to the allegations of "ride theft" being litigated in state court. Moreover, Defendants point out—and Plaintiffs do not dispute—that under the Settlement Agreement, "Defendants did not relinquish their rights to pursue their claims of theft against any of the Class Members." (Resp. to Mot. to Enjoin 17:27–18:6). The state court arrived at the same conclusion, finding JTS neither waived nor released any claims against the Drivers in the *Greene* Class Action. (*See* Order Denying Def.'s Mot. to Dismiss 2:21–23, *JTS v. Onofrietti*, Case No. 18-C-011256 (March 19, 2019), Ex. 4 to Resp. to Mot. to Enjoin).

The state court also issued findings as to res judicata in some of the State Actions. While federal courts often decide res judicata in the first instance, "the situation is drastically changed when the state court has already ruled that the state action is not barred by the res judicata effect of the federal judgment." *Jardine*, 432 F.3d at 943 (citing *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 524 (1986)). "That state court ruling itself may be binding on

the federal court under the Full Faith and Credit Act, 28 U.S.C. § 1738." *Id.*; *see Parsons Steel*, 474 U.S. at 524.

In two of the State Actions, the court, upon motions to dismiss, addressed whether the FLSA and Nevada wage-law claims in the *Greene* Class Action bar the ride-theft claims. The court concluded that the evidence required to establish JTS's claims in the State Actions is substantially dissimilar to that needed to establish the FLSA and Nevada wage claims. (*Id.* 3:16–19). The court found "no logical relationship between [JTS's] claims against the Defendants in this matter" and those in the *Greene* Class Action. (*Id.* 3:21–25). Therefore, the court held that the ride-theft claims "would not have qualified as compulsory counterclaims, and would therefore have been permissive," rendering them "not barred." (*Id.* 4:1–7).

In short, the re-litigation exception is inapplicable because the State Actions involve claims distinct from those in the *Greene* Class Action. The claims in the State Actions were neither litigated in the *Greene* Class Action, subject to waiver and release, nor barred by res judicata.

### 2. In-Aid-of-Jurisdiction Exception

The in-aid-of-jurisdiction exception authorizes injunctive relief "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Sandpiper Vill.*, 428 F.3d at 843 (quoting *Atl. Coast Line*, 398 U.S. at 295). "This exception arose from the settled rule that if an action is *in rem*, the court first obtaining jurisdiction over the res may proceed without interference from actions in other courts involving the same res." *Id.* (internal citation and quotation marks omitted). Although the in-aid-of-jurisdiction exception applies to some *in personam* actions, "it remains that an injunction is justified only where a parallel state action 'threatens to render the exercise of the federal court's jurisdiction nugatory.'" *Id.* at 843–44 (quoting *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 806 (9th Cir. 2002)).

Plaintiffs have not satisfied the Court that the State Actions, particularly the issuance of writs of attachment and garnishment, seriously impair this Court's Settlement Order. Plaintiffs assert that the State Actions cannot proceed alongside the *Greene* Class Action because the same res is at issue in both tribunals—the Drivers' shares of their respective portions of the settlement fund. Plaintiffs rely on *Flanagan*, where the Ninth Circuit upheld a federal court's injunction targeting state court proceedings. *Flanagan v. Arnaiz*, 143 F.3d 540 (9th Cir. 1998). In that case, the Flanagans "sued several of these federal defendants they had settled with in state court, for breaching the settlement agreement." *Id.* at 543. Because the federal court in *Flanagan* retained jurisdiction over disputes arising from the settlement, the Flanagans' state suit for breach of settlement restricted the federal court's exclusive jurisdiction over settlement, rendering an injunction appropriate. *Id.* at 545–46.

Unlike *Flanagan*, the State Actions here are not for breach of settlement; rather JTS is suing for claims tangential to those litigated in the *Greene* Class Action. Further, and also unlike *Flanagan*, the issued orders in the State Actions do not presently conflict with any outstanding order from this Court.

The Court notes that the relevant yet-to-be-satisfied Order at this stage is the Court's directive that "[p]ursuant to the Settlement Agreement, Defendants shall fund the settlement by April 21, 2019." (*See* Settlement Order 3:20–21, ECF No. 344). Plaintiffs have not met their burden of satisfying the Court that the outstanding writs of attachment and garnishment preclude Defendants, as a matter of law, from fully funding the settlement by the April 21, 2019 deadline. The Court recognizes that Defendants' issuance of writs of garnishment may dictate that certain funds remain on-hold pending the State Actions. Nevertheless, the Court reiterates that the Order requiring Defendants to fully fund the settlement remains in effect. In light of that Order and given the feasibility of Defendants' compliance with it, the Court finds

that the Plaintiffs have failed to meet their burden of demonstrating that the State Actions—at this juncture—render this Court's jurisdiction nugatory.

In summary, the Plaintiffs have failed to prove that an exception to the Anti-Injunction Act applies here to permit the Court to enjoin the State Actions. The Court is unpersuaded that the State Actions impermissibly conflict with this Court's judgments or seriously frustrate this Court's standing orders. Rather, the Court finds insufficient evidence and legal authority supporting Plaintiffs claim that the State Actions impede Defendants from fully funding the settlement by the Court-ordered deadline. Because Plaintiffs have not convinced the Court of the State Actions' preclusive impact on Defendants' compliance with the Settlement Order, the Anti-Injunction Act bars the requested injunctive relief.

**B. Defendants' Obligation to Fund the Settlement**

Lastly, Plaintiffs cite to evidence suggesting that Defendants may decline to fund the settlement by the deadline set forth by the Court's Settlement Order and the parties' Settlement Agreement. (*See, e.g.*, Mar. 1, 2019 Email Correspondence, Ex. G to Mot. to Enjoin, ECF No. 351-7). In particular, the record contains an email between the parties in which Defendants imply that their obligations as to funding the settlement do not include the garnished amount of $22,996.23 at issue in the State Actions. (*See* Apr. 4, 2019 Email Correspondence, Ex. 10 to Resp. to Mot. to Enjoin, ECF No. 353-12).

The Court takes this opportunity to reiterate that Defendants shall fund the entirety of the settlement fund by April 21, 2019, inclusive of the $22,996.23 at issue in the State Actions. Defendants represented at the Court's hearing on Plaintiffs' Motion that it may seek relief from the Court's Order or seek amendment thereof. The Court notes that the effect of the Settlement Order was to adopt the conditions as agreed upon by the parties. Were the Court to alter an express provision of the Settlement Agreement, it would constitute an improper encroachment on the parties' bargained-for-exchange. Should the parties stipulate to amending the Settlement

Agreement, the Court may entertain amending the Settlement Order to comport with the parties' agreed-upon terms.

### C. Defendants' Motion for Partial Relief Under Rule 60(b)(5)

In Defendants' Motion for Partial Relief Under Rule 60(b)(5), Defendants state that "if the Court is sufficiently concerned that the writs interfere with the Court's judgment or jurisdiction, the Court should modify the judgment to allow for the attachment and garnishment of the funds at issue in lieu of payment to the Claims Administrator." (Defs.' Mot. Partial Relief 6:21–27, ECF No. 360). However, because the instant Order finds that the Plaintiffs have failed to demonstrate that the State Actions do not preclude Defendants from funding the settlement in compliance with the Settlement Order and denies Plaintiffs' request for injunctive relief, the Court need not consider Defendants' alternative request for modification of the judgment. Accordingly, Defendants' Motion for Partial Relief Under Rule 60(b)(5), (ECF No. 360), is **DENIED as moot**.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Enjoin, (ECF No. 351), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Partial Relief Under Rule 60(b)(5), (ECF No. 360), is **DENIED as moot**.

**IT IS FURTHER ORDERED** that pursuant to the Court's Order incorporating the terms of the parties' Settlement Agreement, (ECF No. 344), Defendants shall fund the settlement by April 21, 2019, pursuant to the foregoing.

**DATED** this __20__ day of April, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Judge